CHRIST HELMER v. COMMERCIAL BANK OF B. M.
WEBSTER.

[FILED JANUARY 7, 1890.]

1. **Negotiable Instruments:** INDORSEMENT: WRITTEN GUARANTY CONSTITUTING. A negotiable promissory note was transferred by the payee, by writing on the back of the note as follows: "For value received I hereby guarantee payment of the within note, and waive demand and notice of protest on the same when due. A. H. Warren." *Held*, To be an indorsement. (*Heard v. Dubuque, etc., Bank*, 8 Neb., 10; *State, etc., Bank v. Haylen*, 14 Id., 480.)

2. ————: BONA FIDE HOLDER: TRANSFEREE OF COLLATERAL IS. Where a negotiable promissory note is transferred before due, as collateral security for a loan then made, and is received by the indorsee without notice of any defense existing against it in the hands of the indorser, he is entitled to be treated as a *bona fide* holder and protected, at least to the extent of the loan.

ERROR to the district court for Gage county. Tried below before BROADY, J.

*Winter & Kauffman,* for plaintiff in error:

The guaranty was not an indorsement in the sense of cutting off the maker's defenses. (*Lamorieux v. Hewitt,* 5 Wend. [N. Y.], 307; *Miller v. Garton,* 2 Hill [N. Y.], 188; *Snevily v. Ekel,* 1 W. & S. [Pa.], 203; *Cannon v. Norton,* 14 Vt., 178; *Andrews v. McCoy,* 41 Am. Dec., 72; *Omaha Nat. Bank v. Walker,* 5 Fed. Rep., 399; *Trust Co. v. Nat. Bank,* 101 U. S., 68:) One who takes paper as collateral security is not a *bona fide* holder for value. (1 Daniel, Neg. Inst., 729, 741; *Bank of Hall,* 6 Ala., 639; *Andrews v. McCoy,* 8 Id., 920; *Ruddick v. Lloyd,* 15 Ia., 441; *Roxborough v. Meesick,* 6 Ohio St., 448.) *Bank v. Haylen,* 14 Neb., 480, and *Heard v. Bank,* 8 Id., 10, differ from the case at bar in that the notes were there purcha ed outright by the holders.

*A. D. McCandless,* contra:

The writing on the back of the note amounted to an indorsement with enlarged liability, and operated as a transfer. (*Heard v. Bank,* 8 Neb., 10; *Bank v. Haylen,* 14 Id., 480; *Robinson v. Lair,* 31 Ia, 9; *Childs v. Davidson,* 38 Ill., 437; *Fawsett v. Ins. Co.,* 5 Ill. App., 272; *Leedy v. Nash,* 67 Ind., 311; *Upham v. Prince,* 12 Mass., 15; *Thomas v. Dodge,* 8 Mich., 51; *Russell v. Klink,* 53 Id., 161; *Phelps v. Church,* 32 N. W. Rep. [Mich.], 30; *Dunning v. Heller,* 103 Pa. St., 269.) Plaintiff, holding the notes as collateral security, stood in the same position as a purchaser for value before maturity. (See cases cited in opinion.)

MAXWELL, J.

This action was brought on a promissory note of which the following is a copy:

"$210.        MARYSVILLE, KANSAS, May 13, 1887.

"Eight months after date I, we, or either of us, promise to pay to the order of A. H. Warren $210, at the First Nat'l Bank, of Marysville, Kansas, with interest at twelve per cent per annum from date until paid, for value received.
                                        "CHRIST HELMER.

"No. 19362.  Due ———, 188—.  P. O., Wymore, Neb. (Bank of Wymore Coll., No. 2796, Wymore, Neb.)"

(Indorsed:)  "G. B. Jennings. 4389. For value received I hereby guarantee payment of the within note and waive demand and notice of protest on same when due. A. G. Warren. 10 Pd. to Warren, 7/9/87. Pay M. H. Southwick, cashier, or order, for collection and Rets. account of Commercial Bank of B. M. Webster, Essex, Iowa. B. M. Webster, per E. P."

To this note the defendant below (plaintiff in error) interposed first a general denial and second alleged in his an-

swer that the said note was given to A. H. Warren upon an executory contract and agreement for medical treatment to be rendered and a cure to be effected in the case of defendant's daughter, Paulina Helmer, and upon the full and absolute express guarantee of said A. H. Warren that this said treatment would effect her full and perfect recovery, and in case he failed to restore her to full and perfect health this defendant was to be wholly released and discharged from the payment of said note and from all liability thereon or for said services; that said A. H. Warren did wholly fail to bring about the recovery of his said patient, Paulina Helmer, or to render her any assistance or benefit whatever, whereby the said contract, agreement and express guarantee, which constituted the sole and only consideration for said note, entirely failed, and this defendant has received no benefit or consideration whatever therefor; that said A. H. Warren is a traveling doctor, who came to defendant's house without request directly or indirectly from this defendant or any one for him, on or about the 10th day of April, 1887, and falsely and fraudulently represented to this defendant that he was a regular physician and an expert especially skilled in the treatment of the chronic complaint with which defendant's daughter was suffering, and was a specialist and expert therein and had full knowledge and experience of and in the cause, treatment and cure of the same; that he would effect a complete cure in three months, if defendant would pay him $100 and would charge him nothing whatever if he failed so to cure her.

"To this proposition this defendant agreed and said A. H. Warren began his pretended treatment, but in the second month thereof informed this defendant that a surgical operation was necessary which could be performed only by a certain physician of St. Joseph, Mo., whose name is unknown to this defendant, and that he must increase the fee by $110 and then her recovery would be assured.

Whereupon this defendant agreed to pay $210 upon express guarantee of her complete cure.

"That later said A. H. Warren falsely and fraudulently represented to this defendant that he had been obliged to send for the physician from St. Joseph, Mo., a second time, and that the latter being unable to come had sent a substitute and that this defendant must again increase the fee by. $100 and was now indebted to him the said A. H. Warren in the sum of $310 fees and $35 additional for expenses, but assured the defendant that said operation had been successful, and that his daughter was now completely cured and would under his continued treatments be fully restored to health.

"Upon these false and fraudulent representations of cure and of future attendance this defendant was induced to give said A. H. Warren a horse at the agreed price of $135 and this said promissory note for $210, after which said A. H. Warren abandoned said patient and left the country.

"And defendant says that his pretended treatment of said patient effected no cure and gave the patient no benefit or relief whatever; that said pretended visit from and surgical operation by the physician from St. Joseph, Mo., if had at all, was wholly without beneficial results to said patient; that said second visit by substitute of said alleged St. Joseph physician was to this defendant unknown and by him wholly unauthorized or agreed to, and from all these the said patient received no benefit whatever; that said A. H. Warren has already obtained from him by fraudulent means, the sum of $145, for which the defendant, nor any one for him, has received any benefit whatever, and that especially the said note sued herein was obtained from him by false and fraudulent representations of present cure and further treatment and services to be rendered until said patient was fully restored, and said note has been and is without consideration, save the said executory con-

tract and express guarantee of cure, which consideration has wholly failed."

On the trial of the cause the plaintiff below (defendant in error) introduced testimony tending to show that the bank took the note in question before due, for a full consideration and without notice of any defense to the same, as collateral security for a prior indebtedness and as security for a new loan.

The plaintiff in error, without introducing any evidence tending to impeach the *bona fides* of the defendant in error in taking the note in question, sought to introduce evidence in support of the allegations of his answer as to the want or fraudulent character of the consideration. This the court excluded until there was some testimony offered tending to impeach the good faith of the bank in taking the paper. In this there was no error.

The indorsement on the note in question is similar to that in *Heard v. Dubuque Co. Bank*, 8 Neb., 10, and *State Nat'l Bank v. Haylen*, 14 Id., 480, and for the reason stated in those cases will be held sufficient.

The next question presented is whether a *bona fide* holder of the note, taken as collateral security for a loan made at the time of indorsement, is entitled to protection? In other words, whether one to whom a negotiable promissory note has been transferred before due as collateral security for a loan, and who takes it without notice of any defense existing against it in the hands of the person from whom he received it, is entitled to be treated as a *bona fide* holder in the commercial sense? We think he is, at least to the extent of the loan. (*Williams v. Smith*, 2 Hill, 301; *Des Moines Nat'l Bank v. Chisholm*, 33 N. W. R., 234; *Lindsay v. Chase*, 104 Mass., 253; *Meyer v. Evans*, 66 Iowa, 179; *McCarty v. Clark*, 10 Id., 588; *Chaffe v. Whitfield*, 4 Southern Rep. [La.], 563; *Bonaud v. Genesi*, 42 Ga., 639; *Smith v. Isaacs*, 23 La. Ann., 454; *Succession of Dolhonde*, 21 Id., 3; *L. S. Bank v. Gaiennie*, 21 Id., 555; *Logan v. Smith*, 62

Mo., 455; *Buchanan v. Internat'l Bank,* 78 Ill., 500; *State Savings Association v. Hunt,* 17 Kan., 532; *Olney F. A. Bank v. Beaird,* 3 Ill. App., 239; *Davis v. Carson,* 69 Mo., 609; *Pier v. Bullis,* 48 Wis., 429; *Miller v. Pollock,* 99 Pa. St., 202; *Brown v. Callaway,* 41 Ark., 418; *Bone v. Tharp,* 63 Iowa, 223; *Union Bank v. Barber,* 56 Id., 559.)

The cases are not in entire harmony upon this point, but the above rule we deem the better one and we adopt the same. The proof in this case tends to show that the amount of the loan exceeds the security and hence that the holders are entitled to payment in full.

There is no error in the record and the judgment is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.